**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| **JESSICA TOWNSEND,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **vs.** | ] | |
| | ] | |
| **DYNAMIC EDGE, INC.,** | ] | |
| **DYNAMIC EDGE, LLC, and** | ] | |
| **DYNAMIC EDGE SERVICES INC.,** | ] | **JURY DEMAND**   1:21-cv-96-GNS |
| | ] | |
| **Defendants.** | ] | |

---

**COMPLAINT**

---

Plaintiff Captain Jessica Townsend ("Plaintiff" or "CPT. Townsend"), by and through counsel, alleges for her Complaint as follows:

## I. INTRODUCTION

1.  Plaintiff brings this action against Defendants Dynamic Edge, Inc., Dynamic Edge, LLC, and Dynamic Edge Services Inc. (collectively, "Defendants") for legal relief to redress unlawful violations of her rights under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4301*, et seq.*, the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA"), and Kentucky law.

2.  Plaintiff serves at the rank of Captain in the Kentucky National Guard. From March 2019 through March 2021, she served two tours of duty in Iraq and Washington, D.C.

3.  Prior to her active-duty service, she earned over $87,000 annually as an employee with Defendants. She worked upwards of 80 hours per week crisscrossing the United States to secure information technology service contracts for Defendants. During this time, she

1

increased Defendants' sales by 20% and had $1,500,000 in sales pending with several clients, a book of business she had painstakingly developed over 2 ½ years with Defendants.

4.  In the months leading up to CPT Townsend's first deployment, Defendant hired several new employees. It tasked CPT Townsend with training all of these employees, despite the fact that she worked on 100% commission (with a draw), ostensibly as an outside sales employee. During this time, she worked 60-80 hours per work primarily training the new hires. As a result, she was misclassified as exempt from the FLSA's minimum wage and overtime requirements.

5.  While serving in Iraq, CPT Townsend was owed earned commissions from Defendants for client contracts she had closed prior to her active duty. However, Defendants only made one or two payments and stopped disbursing these owed commissions payments.

6.  USERRA required Defendants to protect CPT Townsend's career during her absence on active military duty. The very purpose of the Act is to encourage service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from prolonged active-duty service.

7.  Defendants did not protect her career. Rather, while CPT Townsend was away on active military duty, it systematically destroyed her client base and book of business. During her absence, Defendants reassigned CPT Townsend's client accounts to newly hired employees who mishandled the client accounts, failed to maintain the business relationships, and then abruptly quit. As a result, the Solutions Engineer position was left vacant.

8.  As a result, when CPT Townsend returned from active duty, her book of business was nonexistent. Her former clients had taken their business elsewhere. Defendants did not

restore her book of business.  Instead, they expected her to start from scratch making calls and traveling across the U.S. while working on 100% commission with a token draw per month that represented about 50% of her pre-deployment earnings.

9.     As Defendants knew, their offer provided CPT Townsend with no meaningful opportunity to earn a living and support her family and effectively forced her to seek work elsewhere.

10.     CPT Townsend now brings this action for redress of the injuries she has suffered because Defendants failed to protect her career and did not restore the full benefits of her employment upon her return from active military service, in violation of the requirements of the USERRA and state law.

## II. JURISDICTION AND VENUE

11.     This Court has original subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.  This Court has subject matter jurisdiction over the USERRA claims pursuant to 38 U.S.C. § 4323(b)(3), and the FLSA claim pursuant to 29 U.S.C. § 216(b).

12.     This Court has supplemental jurisdiction over CPT Townsend's state law claims pursuant to 28. U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case controversy.

13.     This Court has specific personal jurisdiction over Defendants, each a foreign corporate entity, because they transacted business in Kentucky and purposely availed themselves to this forum through their actions, including, but not limited to, the following: (1) Encouraging CPT Townsend as their employee to market, solicit, and secure business contracts with numerous health care clinics throughout Kentucky, and successfully securing such contracts; (2) Recruiting and hiring CPT Townsend with the knowledge that she was a resident of Kentucky and member of the Kentucky National Guard; (3) Knowingly permitting CPT Townsend to work remotely from her home in Bowling

3

Green, Kentucky, during the relevant time period; (4) Transporting CPT Townsend to and from Bowling Green Regional Airport via private plane for business trips; (5) Supplying CPT Townsend with computer equipment and a company credit card for use in Kentucky; and (6) The claims herein arose from and are directly related to Defendants' contacts with this forum: unlawful employment practices during CPT Townsend's four-and-a-half years of employment with Defendants.

14.    Venue is proper in the Western District of Kentucky because Defendants, each an "entity" under the federal venue statute, are deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

### III. THE PARTIES

15.    CPT Townsend resides in Bowling Green, Warren County, Kentucky and is a citizen of the United States. She is an active member of the Kentucky National Guard. As relevant to this action, she performed active-duty military service under federal orders pursuant to 10 U.S.C. § 12302 and is therefore entitled to the protections of USERRA. 38 U.S.C. § 4303(16). She is also entitled to protections under Kentucky's equivalent law for any state active duty. Ky. Rev. Stat. § 38.238.

16.    At all relevant times, CPT Townsend was an "employee" within the meaning of USERRA, 38 U.S.C. § 4303(3), and a private sector employee within the meaning of Kentucky law, Ky. Rev. Stat. § 38.238. CPT Townsend was also an "employee" of Defendants within the meaning of the FLSA, 29 U.S.C. § 203(d).

17.    Defendant Dynamic Edge, Inc. is a Michigan corporation with its principal place of business at 1145 Oak Valley Drive, Ann Arbor, Michigan 48108. It may be served

through its Michigan registered agent: Timothy J. Neiman, 1145 Oak Valley Drive, Ann Arbor, Michigan 48108.

18.     Defendant Dynamic Edge, LLC is a Tennessee limited liability company with its principal place of business at 615 Main Street, Suite 101, Nashville, Tennessee 37206-3603. It may be served through its Tennessee registered agent: Timothy J. Neiman, 1123 Summit Avenue, Nashville, TN 37203-4920.

19.     Defendant Dynamic Edge Services Inc. is a Tennessee limited liability company with its principal place of business at 1123 Summit Avenue, Nashville, TN 37203-4920. It may be served through its Tennessee registered agent: Timothy J. Neiman, 1123 Summit Avenue, Nashville, TN 37203-4920.

20.     Defendants, individually and jointly, are an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(r); and an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).  Defendants are also an "employer" under Ky. Rev. Stat. § 337.010(1)(d). Defendants together operate as a "joint employer" as they share in the supervision, compensation, training, and evaluation of CPT Townsend.

## IV. FACTUAL ALLEGATIONS

21.     CPT Townsend has honorably served in the Kentucky National Guard since May 2015 and the U.S. Army since August 2010.

22.     She currently serves at the rank of Captain in the 206th Engineer Battalion.

23.     During her stellar military career, she has earned numerous medals, badges, and honors, including the Army Commendation Medal, Army Reserve Component Achievement Medal, National Defense Service Medal, Global War on Terrorism Service Medal, Army

Service Ribbon, Overseas Service Ribbon, Armed Forces Reserve Medal, and the Combat Action Badge.

24.    In November 2016, Defendants recruited and ultimately hired CPT Townsend.

25.    Defendants were aware of CPT Townsend's Kentucky residency and membership in the Kentucky National Guard.

26.    Defendants provide managed information technology and cloud computing services for businesses in Michigan, Kentucky, and Tennessee.

27.    As relevant to this action, CPT Townsend worked for Defendants as a Solutions Engineer, ostensibly an outside sales position, in which she secured information technology service contracts for Defendants in Kentucky, Tennessee, and other states.

28.    As a Solutions Engineer, CPT Townsend was paid 100% commission with a draw.

29.    CPT Townsend's maximum annual draw was $45,150.00.

30.    In 2018, she earned $87,772.00 from Dynamic in net commissions.

### A. Defendants' Knowledge of USERRA's Requirements

31.    In or around August 2018, CPT Townsend informed Defendants' then-CEO, Bruce McCully, of her upcoming weekend National Guard duties.

32.    When CEO McCully was informed of CPT Townsend's service, he responded, "This is bullshit," and stated she could not attend weekend drill.

33.    CEO McCully went on to say, "How long do you have to do this!?"

34.    As a result, CPT Townsend enlisted the help of her commanding officer, MAJ Robert McWhorter, to educate Defendants about their obligations under USERRA.

35.    On September 6, 2018, Maj. McWhorter sent CPT Townsend USERRA legal resources, which were forwarded to Defendants.

36.    Maj. McWhorter also spoke with CEO McCully regarding Defendants' USERRA obligations.

37.    Around this time, a manager for Defendants, Adam [l/k/u], stated that Defendants "could just find a reason to fire [CPT Townsend]" and that "[Defendants] won't be celebrating the military so much after Trump is out of office."

38.    Between 2017 and 2018, CPT Townsend referred multiple job candidates to Defendants.

39.    Each individual referred to Defendants was a member of the Kentucky National Guard.

40.    Despite being well qualified, including having significant computer and network training (i.e., IT certifications), none of these individuals were hired by Defendants.

**B.   CPT Townsend's Success with Defendants**

41.    In her Solutions Engineer role, CPT Townsend crisscrossed the U.S. to meet with prospective clients on-site and attend various conferences.

42.    She conducted diagnostics on networks, ran technical reports, crunched sales numbers, and presented customized solutions packages. She worked tirelessly for Defendants.

43.    As a result of her hard work, her sales figures grew dramatically and she secured over $1,500,000 in contracts, which represented 20% company growth year over year. Her sales represented the highest in Defendants' 20-plus year history.

44.    Around this time, she discussed becoming Defendants' Sales Manager.

45.    Many individuals within Defendants' ranks believed CPT Townsend would be promoted into management because she was the protégé of CEO McCully. She was known as the "shadow boss" because other employees could reliably turn to her for answers when CEO McCully was unavailable.

46.    She travelled across the country with CEO McCully and was a natural leader, thanks in part to her military training and promotions within the Kentucky National Guard.

47.     In addition to her 60–80 hour workweeks and National Guard duties, CPT Townsend also was working toward earning a Master's in Business Administration degree to demonstrate her interest in learning the marketing and financial side of Defendants' business, which she completed in April 2021.

### C.  CPT Townsend's Non-Exempt Job Duties

48.     In late 2018, Defendants hired several new employees and forced CPT Townsend to train the new hires despite the fact she was classified as an exempt outside sales employee.

49.     The significant time devoted to training the new hires interfered with CPT Townsend's sales opportunities.

50.     During the several months of training, CPT Townsend's primary duty was not sales activity; rather, she was tasked with training the new hires.

51.     CPT Townsend routinely worked over 40 hours per week during this time.

52.     Defendants continued to pay her a draw as an exempt employee. It did not pay her minimum wage or overtime during this time.

### D. CPT Townsend's First Tour of Duty

53.     In fall of 2018, Captain Townsend's National Guard battalion was selected to serve in Iraq as part of Operation Inherent Resolve.

54.     She informed Dynamic of her upcoming military leave immediately.

55.     CPT Townsend and Defendants agreed that she would be compensated for earned commissions for contracts that were secured or in progress prior to her deployment.

56.     Originally, CPT Townsend was set to receive about 75%  of total commissions for her pending deals that closed within three months of her deployment. However, shortly before the commencement of her activity duty, Defendants unilaterally reduced the level

of commission compensation owed and limited the accrual timeframe to two months from CPT Townsend's departure date.

57.     On March 13, 2019, shortly before her deployment for active duty training, CPT Townsend emailed CEO McCully to "note [their] discussions about any outstanding commissions. These will continue to be paid as usual … My bank information has not changed."

58.     She was stationed at Ayn al-Asad Airbase in western Iraq until June 2020.

59.     While on deployment, CPT Townsend was not paid her earned commissions.  In fact, she received only two or three commission payments from Defendants during her approximate one year in Iraq.

60.     While on deployment, CPT Townsend sustained injuries in the January 2020 Iranian attack on Ayn al-Asad Airbase, the largest ballistic missile attack against Americans in history.

61.     As a result of her injuries, CPT Townsend has been nominated for the Purple Heart, which is pending final approval.

62.     CPT Townsend was honorably discharged from active military duty and, upon her return home, she convalesced from the injuries she sustained as a result of the ballistic missile attack.

63.     CPT Townsend kept Defendants informed of her status and her expected return-to-work date.

### E.  CPT Townsend's Return from Iraq

64.     In November 2020, CPT Townsend returned to work for Defendants.

65.     However, she was not reinstated with the same pay and benefits as she would have attained had she not served.

66.    Upon her return to Defendants, CPT Townsend quickly realized that her sales pipeline had not been maintained by Defendants during her absence. A return to her former Solutions Engineer position would have required CPT Townsend to start anew and make less than half of her earnings in the months leading up to her tour of duty.

67.    Instead, CPT Townsend was forced to accept a "special project" position that was set to last three months and paid a flat $50,000 annual salary with no commissions.

68.    This level of compensation wholly failed to account for her earnings of over $87,000 and sizeable sales pipeline she had prior to her military service.

69.    Further, prior to CPT Townsend's service in Iraq, Defendants made representations that CPT Townsend would be placed in a management-level role.

70.    During these discussions with Defendants, CPT Townsend stated she wished to become Defendants' Sales Manager, a role that catered to her knack for deal-making and leadership abilities honed in the National Guard. She also pointed out that she was set to complete her MBA in April 2020.

71.    Defendants stated CPT Townsend would be good for this role, but stated they would need to fire the current Sales Manager first.

**F. CPT Townsend's Second Tour of Duty**

72.    In January 2021, CPT Townsend's battalion was activated to serve in Washington, D.C. as part of Operation Capitol Response II.

73.    CPT Townsend notified Defendants of her deployment via phone call.

74.    CPT Townsend served in Washington, D.C. under federal orders until March 31, 2021.

75.    While CPT Townsend was in Washington, D.C., Defendants fired their Sales Manager.

76.    Upon her return, instead of offering CPT Townsend the Sales Manager position that they had discussed, Defendants told Capt. Townsend she had to return to the commissions-

based Solutions Engineer position with a monthly draw of $3,762, without the significant

sales pipeline she had previously built and which had been allowed to dry up during her

deployment to Iraq.

77. Based on her previous career trajectory and CPT Townsend's excellent work record with

Defendants, it is reasonably certain she would have been promoted into a manager role

had she not deployed to Iraq and Washington, D.C.

78. CPT Townsend expected to be reinstated at a position to which she was entitled using the

"escalator principle" as required by USERRA, 38 U.S.C. § 4301 et seq.

79. Defendants were well aware of their responsibilities under USERRA, as evidenced by

prior dealings with CPT Townsend and her commanding officer.

## V. CAUSES OF ACTION

80. CPT Townsend incorporates herein the foregoing paragraphs.

### A. Failure to Reemploy in the Same Position in Violation of USERRA, 38 U.S.C. §§ 4312-4313, 4316

81. "At the point of rehire, [38 U.S.C.] §§ 4312 and 4313 entitle a returning veteran to

reemployment in either the position [she] would have held absent [her] departure for

military service 'or a position of like seniority, status and pay.'" *Petty v. Metro. Gov't of*

*Nashville & Davidson Cty.*, 687 F.3d 710, 716 (6th Cir. 2012).

82. Under USERRA, "any person whose absence from a position of employment is

necessitated by reason of [military service] shall be certified to the reemployment rights

and benefits and other employment benefits of this chapter." 38 U.S.C. § 4312.

83. "A person entitled to reemployment under section 4312, upon completion of a period of

service in the uniformed services, shall be promptly reemployed . . . in the position of

employment in which the person would have been employed if the continuous

employment of such person with the employer had not been interrupted by such service, the duties of which the person is qualified to perform" or in another position "consistent with the circumstances of such person's case, with seniority." 38 U.S.C. § 4313(1)(A).

84. "The term 'seniority' means longevity in employment together with any benefits of employment which accrue with, or are determined by, longevity in employment." § 4301(12).

85. "In determining entitlement to seniority and seniority-based rights and benefits, the period of absence from employment due to or necessitated by uniformed service is not considered a break in employment." 20 C.F.R. § 1002.210.

86. "A person who is reemployed under this chapter is entitled to the seniority and other rights and benefits determined by seniority that the person had on the date of the commencement of service in the uniformed services plus the additional seniority and rights and benefits that such person would have attained if the person had remained continuously employed." 38 U.S.C. § 4316(a).

87. CPT Townsend gave advance notice of her service to Defendants.

88. The length of her service did not exceed five years.

89. For each tour of active duty, CPT Townsend returned to Defendants but was not given the same position, with the same benefits and pay, as she would have held had her employment not been interrupted by her military service.

90. Upon her return, Defendants did not return CPT Townsend to a position with the seniority and other rights and benefits that she had on the date of the commencement of his service.

12

91.   Upon her return, Defendants did not return CPT Townsend to a position which included the additional seniority, rights and benefits she would have attained if CPT Townsend had remained continuously employed.

92.   CPT Townsend earned less pay in her reemployed position than had she not served.

93.   As a result, CPT Townsend suffered damages.

## B.  Discrimination in Violation of USERRA, 38 U.S.C. § 4311(a)

94.   "After an employer rehires a veteran, [38 U.S.C.] § 4311 prohibits the employer from discriminating against the veteran with respect to 'any benefit of employment.'" *Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 716 (6th Cir. 2012).

95.   Section 4311(a) states that "a person [such as CPT Townsend] shall not be denied . . . promotion . . . or any benefit of employment by an employer on the basis of [his membership in the armed services]." 38 U.S.C. § 4311(a).

96.   "An employer shall be considered to have engaged in actions prohibited . . . under subsection [4311](a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1).

97.   After CPT Townsend was rehired by Defendants into a temporary position, CPT Townsend's seniority was eliminated.

98.   Defendants refused to promote CPT Townsend into a management-level position because of her membership in the uniformed services and the continuing time obligations associated with such service.

99.    CPT Townsend continued to suffer from ongoing discrimination in the form of refusal to promote because of her military status as well as the ongoing discriminatory nature of her demoted status, less pay, reduced job responsibilities, less prestige, and reduction in career potential.

100.   Defendants treated CPT Townsend differently than non-servicemembers because of her military membership.

101.   But-for CPT Townsend's status as a member of the armed services, Defendants would not have taken these actions.

102.   As a result, CPT Townsend suffered damages.

### C. Violation of the Fair Labor Standards Act
### (Misclassification)

103.   Defendants are an employer covered by the minimum wage and overtime requirements in the FLSA.

104.   As an employee for Defendants, CPT Townsend worked hours in excess of 40 hours per week but was not paid overtime.

105.   From approximately November 2018 until March 2019, CPT Townsend was not primarily engaged in sales or was not working outside of Defendants' office.

106.   Defendants knew of their obligations under the FLSA. They also knew that it classified CPT Townsend as an exempt employee.

107.   Defendants recklessly disregarded whether assigning CPT Townsend non-exempt duties, including training other employees, violated the FLSA.

108.   Defendants knew that CPT Townsend was not exempt from the wage and overtime obligations imposed by the FLSA and knew that they are required to pay CPT Townsend for all hours worked.

109. In spite of such knowledge, Defendants have willfully withheld and failed to pay the wages and overtime compensation to which CPT Townsend is entitled.

110. The exact amount of compensation, including overtime compensation, which Defendants have failed to pay CPT Townsend is unknown at this time, as many of the records necessary to make such precise calculations are in the possession of Defendants.

111. The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment. CPT Townsend is entitled to review Defendants' records of hours worked to determine the exact amount of overtime and minimum wages owed by Defendants. Absent Defendants keeping these records as required by law, CPT Townsend is entitled to submit information about the number of hours worked. Defendants' failure to pay CPT Townsend compensation for all hours worked and/or at the lawful overtime rate is not based on good faith or reasonable grounds, or a belief that such failure is not in violation of FLSA.

112. Pursuant to 20 U.S.C. § 216(b), CPT Townsend is entitled to liquidated damages in an amount equal to the compensation and/or overtime which she has not been paid.

113. Defendants' actions constitute willful violations of the FLSA.

114. Under 50 U.S.C. 3936(a), the statute of limitations for CPT Townsend's FLSA claims was tolled during her federal active-duty service.

115. As a result, CPT Townsend suffered damages.

### D. Violation of the Kentucky Wage and Hour Act
### (Misclassification)

116. Defendants are an employer covered by the minimum wage and overtime requirements in the Kentucky Wage and Hour Act, Ky. Rev. Stat. § 337.010, *et seq.*

117.   CPT Townsend incorporates herein the foregoing paragraphs regarding Defendant's
       FLSA violations.

118.   As a result of Defendants' actions as set out in those paragraphs, in violation of Kentucky
       law, CPT Townsend suffered damages.

### E. Failure to Grant Leave of Absence under Ky. Rev. Stat. § 38.238

119.   Under Kentucky law, Defendants were required to provide CPT Townsend with an
       unpaid leave of absence without penalty while she was serving. Ky. Rev. Stat. § 38.238.

120.   CPT Townsend was entitled to return to "her former position of employment with the
       seniority, status, pay or any other rights or benefits … she would have had if … she had
       not been absent …." *Id.*

121.   As described in the above paragraphs, Defendants failed to provide CPT Townsend a
       leave of absence without penalty after she served in Iraq and in our nation's capital,
       instead failing to fully reinstate her.

### VI. PRAYER FOR RELIEF

122.   Based on the foregoing, CPT Townsend prays for the following relief:

   A.   All amounts of lost wages and benefits she would have received but for Defendants'
        violations of USERRA and FLSA, including, but not limited to back pay and front pay
        (or reinstatement), plus an equal amount of liquidated damages and/or prejudgment
        interest;

   B.   Liquidated damages;

   C.   Compensatory damages;

   D.   Punitive damages;

E. An order by the court to change all employment records to reflect CPT Townsend's position and job duties as she would have been entitled to absent Defendants' violations of USERRA;

F. All reasonable costs and attorney's fees;

G. Prejudgment and post judgment interest;

H. Any such other legal relief as may be appropriate or to which CPT Townsend may be entitled under federal or state law; and

I. CPT Townsend further demands a Jury to try this cause.


Respectfully Submitted,


*s/J. Corey Asay*
Joseph Corey Asay, Ky. Bar #98665
MORGAN & MORGAN
333 West Vine Street, Suite 1200
Lexington, Kentucky 40507
Telephone: (859) 286-8368
Facsimile: (859) 286-8384
casay@forthepeople.com

Curt M. Masker, TN Bar No. 037594
(*Pro Hac Vice Motion Forthcoming*)
THE MASKER FIRM
810 Dominican Drive, Suite 314
Nashville, Tennessee 37228
Telephone: (615) 823-1737
Facsimile: (615) 821-0632
curt@maskerfirm.com

*Counsel for Plaintiffs*